UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARGARET PALMENTO,

      Plaintiff,

vs.

CITY OF MIDDLETOWN, JOSEPH
DESTEFANO, MAYOR, CITY OF
MIDDLETOWN, CHRISTOPHER
FARINA, FRANCES AMELIO and
PHILLIP ROTELLA,  sued in their
individual capacities and as Commis-
sioners of the City of  Middletown
Civil Service Commission,

      Defendants.

----------------------------------------------------x

FILED
U.S. DISTRICT COURT

2005 MAR 18  A 8:48

S.D. OF N.Y. W.P.

**COMPLAINT**

ECF CASE

ROBINSON

**05 CIV. 2955**

     Plaintiff, by and through her counsel, Michael H. Sussman, hereby alleges as follows against defendants:

I. **PARTIES**

    1.  Plaintiff, Margaret Palmento, is a resident of the County of Orange, State of New York within this judicial district,

    2.  Defendant, City of Middletown, is a body municipal, created pursuant to the laws of the State of New York.  It is governed by a Mayor and a nine member Common Council and situated within this judicial district.

    3.  Joseph Destefano is the duly elected mayor of the City of Middletown

-1-

and is sued in his individual capacity for the acts set forth herein all committed under color of state law.  Mr. DeStefano currently resides in the City of Middletown, County of Orange, within this judicial district.

4.  Defendants Farina, Amelio and Rotella currently serve as members of the City of Middletown Civil Service Commission.  Each resides in the County of Orange, is of legal age and may be sued in his/her individual capacity for illegal acts committed under color of state law and through the authority vested in them by state law.

## II. JURISDICTION

5.  As plaintiff alleges that defendants violated rights extended to her by and through the First and Fourteenth Amendments to the United States Constitution, as enforced against defendants by and through 42 U.S.C. sec. 1983, this Court has jurisdiction over her claims pursuant to 28 U.S.C. secs. 1331, 1343 (3) & (4) and 42 U.S.C. secs. 1983 and 1988.

## III. FACTUAL ALLEGATIONS

6.  Plaintiff served for more than 18 years as Civil Service Executive Administrator of the Middletown Civil Service Commission.

7.  Plaintiff's position was in the exempt classification, making her terminable at will and without guarantee of pre or post-termination due process.

-2-

8. Plaintiff was to report to a three member municipal civil service commission currently comprised of defendants Farina, Amelio and Rotella.

9. Defendant DeStefano has served as Mayor of the City of Middletown for approximately ten years.

10. Under the City of Middletown's Charter, the Mayor is not a member of the Civil Service Commission.

11. Instead, the Mayor is required to nominate three individuals to serve as members; the Common Council may then confirm or reject these nominations.

12. For at least one half of defendant's tenure as Mayor, the Civil Service Commission has not had three duly appointed and functional members.

13. For at least one half of defendant's tenure as Mayor, the Civil Service Commission failed to hold regular meetings or conduct business as is required by state law.

14. Instead of insuring a properly functioning Civil Service Commission, defendant DeStefano attempted to control appointments to civil service positions in the City of Middletown, whether competitive or not.

15. On several occasions, plaintiff and former Commissioners Teabout and Hunt personally appealed to the defendant Mayor to appoint a functional Civil Service Commission, but he failed to do so.

-3-

16. On two occasions, plaintiff blocked defendant DeStefano from having his way and distorting civil service law to achieve his own objectives.

17. Due to her advocacy on behalf of civil service rules and requirements, plaintiff alienated herself from defendant DeStefano.

18. As a consequence of such alienation, defendant DeStefano influenced the current Civil Service Commission to terminate plaintiff's employment.

19. Specifically, in July 2002, one Jeff Madden was made a detective in the City of Middletown Police Department.

20. At the time of his selection, a duly created civil service list existed for this position.

21. After this selection, an individual whose name appeared on the eligibility list, Christopher Duncanson, the son of one of the Mayor's political opponents, initiated litigation against the City of Middletown, the Civil Service Commission and Jeffrey Madden.

22. Duncanson's suit sought a court order requiring his appointment to the detective position.

23. Defendant City provided the Civil Service Commission with no representation in responding to this lawsuit.

24. Since plaintiff had information relevant to the claims advanced in the

lawsuit which were not being provided to the Court by the City of Middletown and, instead, were being denied or contradicted, plaintiff filed a letter with the presiding State Supreme Court Justice explaining the history of the position and the eligibility list the defendants had been denying existed.

25. Defendant Destefano expressed hostility toward, and anger with, plaintiff's conduct.

26. On a subsequent occasion, Destefano filled the position of Assessor's Aide with a provisional appointee.

27. As this was a civil service position and as the City is required to order civil service tests to establish an eligibility list for such positions, plaintiff ordered such a list.

28. By so acting, plaintiff performed one of the duties of her position.

29. Defendant DeStefano objected to the ordering of this test, which plaintiff then cancelled.

30. Noting that the provisional was still filling the Assessor Aide position and in an effort to comply with state civil service law, plaintiff again ordered the relevant civil service test.

31. After she ordered the required test for Assessor Aide on a second occasion, defendant DeStefano interrogated plaintiff and expressed profound

displeasure with her conduct, claiming falsely that she had told others in City Hall that the incumbent had failed a prior civil service test.

32.  As a consequence of defendant's outburst, plaintiff asked the State to cancel the test.

33.  In 2003, the New York State Civil Service Commission issued a report which was highly critical of the Middletown Commission noting, among other things, its failure to meet and conduct business between 1999 and late 2003.

34.  During this time period, plaintiff had repeatedly sought to have the Commission hold the monthly meetings required by law.

35.  For instance, in 2003, at least monthly, plaintiff called Maria Ingrassia, then the Chair of the two member Commission, to arrange meetings of the Commission.

36.  However, Ms. Ingrassia often did not return plaintiff's calls, failed to call meetings or both.

37.  After receiving the state audit, plaintiff prepared a detailed response, explaining the lack of cooperation she had received from municipal agencies, including the Middletown Board of Education, in fulfilling commission functions.

38.  Plaintiff called Albany to advise that she had prepared a response to the state audit.

39.  A representative of the NYS Department of Civil Service advised that it would not accept plaintiff's response to the audit, instead demanding one from the Commission itself.

40.  The Middletown Commission failed to refute state findings, but, instead, through its counsel agreed to use the state recommendations as a blueprint from which to work.

41.  Defendant DeStefano resented plaintiff's disclosure of positions contrary to those asserted by the City of Middletown's counsel in the <u>Duncanson</u> litigation; her effort to secure a proper civil service examination for the position of Assessor Aide and her reply to the State Civil Service Commission.

42.  Defendant DeStefano accused plaintiff of associating privately with Marlinda Duncanson, the Chair of the Common Council, Christopher Duncanson's mother, and a person defendant DeStefano publicly accused of reporting his allegedly improper or criminal activities to third parties.

43.  Based on this association and her protected speech acts, defendant DeStefano determined that he would have plaintiff terminated before the end of 2005, when his own term as Mayor is due to expire.

44.  On or about February 7, 2005, before the Civil Service Commission took any formal action, one of Mr. DeStefano's counsel, Robert Isseks,

-7-

accompanied defendants Farina and Rotella to plaintiff's office.

45. There, Chairperson Farina advised plaintiff that the Commission was making a change, letting her go. Plaintiff inquired what that meant and was told she had a choice: to resign or retire.

46. When she demurred and indicated that she needed to discuss this with her attorney, defendant Farina told plaintiff to vacate her office.

47. These defendants lacked authority to order plaintiff out of her office as the Commission had not voted by February 7, 2005 to terminate plaintiff's employment or to suspend her from duty.

48. At or about the same, defendant Farina ordered her from her office, defendant Mayor announced at a meeting of the Board of Estimate that plaintiff had been terminated from municipal employment.

49. The Mayor made a similar statement at a public city council meeting.

50. In fact, by the time defendant DeStefano made these statements, the Civil Service Commission had taken no action terminating plaintiff's employment.

51. Approximately one week later, the Civil Service Commission voted to terminate her employment at a meeting attended by Mr. Isseks, defendants' attorney, and appointed Joseph Masi, a long-time political ally of defendant DeStefano, to replace plaintiff on a temporary basis.

-8-

52. Defendant DeStefano orchestrated and directed defendants Farina, Rotella and Amelio to terminate plaintiff because of her speech acts, as set forth herein, and her perceived association with Duncanson, one of defendant DeStefano's principal political opponents.

53. Due to her termination, plaintiff will be denied salary, benefits and pension proceeds.

54. Due to her termination, plaintiff has been, and will continue to be, caused emotional distress and will likely suffer stress and medical consequences.

**IV. CAUSES OF ACTION**

55. Plaintiff incorporates paras. 1-54 as if fully restated herein.

56. By directing plaintiff's termination in retaliation for speech acts and associations protected by the First Amendment, defendant DeStefano violated plaintiff's rights as made actionable against him by 42 U.S.C. sec. 1983.

57. By discharging plaintiff for speech acts and alleged associations which angered defendant DeStefano, defendants Farina, Rotella and Amelio violated her rights as guaranteed by the First Amendment to the United States Constitution as made actionable against them by 42 U.S.C. sec. 1983.

58. In so proceeding, defendants served as the defendant City's principal decision-makers and bound and made liable the city to plaintiff for violation of the

same rights.

## V. PRAYER FOR RELIEF

WHEREFORE, plaintiff prays that this Honorable Court:

a) accept jurisdiction over this matter;

b) empanel a jury to hear and decide the matter;

c) award to plaintiff make whole relief, including reinstatement to her prior position, back- pay with pre- and post-judgment interest, front pay and compensatory damages for the non-pecuniary injuries shall has suffered and shall continue to suffer because of defendants' wrongful conduct;

d) award to plaintiffs the attorneys fees and costs incurred in prosecuting this matter pursuant to 42 U.S.C. sec. 1988, and

e) enter any other relief it deems proper and just.

Respectfully submitted,

MICHAEL H. SUSSMAN (3497)

LAW OFFICES OF MICHAEL H. SUSSMAN
PO BOX 1005
GOSHEN, NY 10924
(845)-294-3991

COUNSEL FOR PLAINTIFF

-10-